UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
ANDREA AUDISH,

               Plaintiff,                   21-CV-10127 (GHW) (OTW)

       -against-                         **OPINION & ORDER**

AMERICAN EXPRESS COMPANY,

              Defendant.

-------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

Plaintiff Andrea Audish ("Audish" or "Plaintiff") brings this putative class action against Defendant American Express National Bank[1] ("American Express" or "Defendant"), seeking to stop Defendant's alleged practice of making pre-recorded debt collection calls to consumers nationwide. (*See generally*, ECF 1, Complaint ("Compl.")). Defendant moves to compel arbitration and stay the action under the Federal Arbitration Act, 9 U.S.C. § 1 (the "FAA"). For the reasons that follow, Defendant's motion to compel arbitration is **GRANTED**.[2] The case is **STAYED** pending arbitration.

I. **BACKGROUND**

Plaintiff is a resident of Pearland, Texas. (Compl. ¶ 2). American Express is a national bank with its main office in Utah. (ECF 17, Declaration of Keith Herr in Support of Defendant's

---

[1] Defendant states that Plaintiff erroneously sued it as "American Express Company," and that its correct name is "American Express National Bank." (ECF 8, Answer).

[2] A motion to compel arbitration and stay litigation pending arbitration is non-dispositive and "therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 (S.D.N.Y. 2020), *objections overruled*, No. 10-CV-6950 (AT) (RWL), 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021).

Motion to Compel Arbitration ("Herr Decl.") ¶ 1). American Express issues credit cards to businesses nationwide. (Compl. ¶ 7). As part of its debt collection practice efforts, American Express makes pre-recorded telephone calls to consumers who it has issued credit cards to. (Compl. ¶ 8). Plaintiff alleges that American Express makes these calls even if a consumer does not owe debt on the credit card and even if the consumer has advised American Express to calling. (Compl. ¶ 8).

Plaintiff alleges that until September 2016, she was the employee of a company named Laser Prostate Centers of America ("LPCA"). (Compl. ¶ 13). As part of her employment, LPCA provided Plaintiff with a company credit card, issued by American Express, to use for business expenses necessary for her job. (Compl. ¶ 13). When Plaintiff left LPCA's employment in September 2016, she returned the credit card to LPCA, and has not used the credit card since. (Compl. ¶ 14). American Express repeatedly began calling Plaintiff in 2019 for debt collection purposes related to the LPCA credit card. (Compl. ¶ 15). Although Plaintiff explained multiple times that she did not own the debt and that American Express should stop calling, she continued to receive pre-recorded calls throughout 2020 and 2021. (Compl. ¶¶ 17-18). Plaintiff brought class action claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against American Express, filing this action in November 2021. (*See generally,* Compl.).

Defendant now moves to compel arbitration, arguing that Plaintiff's claim against American Express must be arbitrated pursuant to the arbitration provision (the "Arbitration Provision") in the American Express Cardmember Agreement ("Cardmember Agreement") that governs the credit card at issue. (ECF 16, Defendant's Memorandum of Law in Support of Defendant's Motion to Compel Arbitration and Stay Action ("Motion")).

The Cardmember Agreement provides for arbitration as follows:

**Initiation of Arbitration**
Any claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration provision and the code of procedures of the arbitration organization to which the claim is referred in effect at the time the claim is filed (code), except to the extent the code conflicts with this Agreement.
. . . .

**Significance of Arbitration**

IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration**

IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER CARDMEMBERS OR OTHER PERSONS SIMILARLY SITUATED.

(ECF 17-1 at 8-9).

II. **DISCUSSION**

A. **Choice of Law**

The parties diverge on the choice of law that should be applied to their dispute. Defendant argues that because the Cardmember Agreement contains a Utah choice-of-law provision, the Court should apply Utah law. (Motion at 11). Plaintiff argues that New York law should apply because that is where Defendant "resides" and is headquartered (Compl. ¶ 4), and because she "disputes the existence of any agreement to arbitrate and is not a party to the

cardmember agreement . . ." (Plaintiff's Response in Opposition to Defendant's Motion to Compel ("Opposition") at 3).

"[I]f the dispute at issue concerns either contract formation or whether parties have agreed to submit a particular dispute to arbitration, the court must make an initial determination prior to compelling arbitration." *Velez v. Credit One Bank*, No. 15-cv-4752 (PKC), 2016 WL 324963, at *1 (E.D.N.Y. Jan. 25, 2016). In deciding whether a valid contract to arbitrate was formed between the parties, the Court should not automatically apply the law provided in the Cardholder Agreement's choice-of-law clause. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established"); *see also Biggs v. Midland Credit Mgmt., Inc.*, No. 17-cv-340 (JFB) (ARL), 2018 WL 1225539, at *6 (E.D.N.Y. Mar. 9, 2018) (applying New York law in assessing the existence of a contract because that is where the "plaintiff received the Account Agreement and account statements," despite the contract's choice of Utah law).

Here, both parties agree that the relevant questions of contract formation implicated by Defendant's Motion to Compel Arbitration are substantively similar under both New York and Utah law. (Opposition at 3; Reply at 4). *See Schnabel*, 697 F.3d at 119 (district courts need not resolve choice-of-law questions where the laws of the disputed forum states are substantially similar). For the sake of clarity, and because a majority of the parties' authorities in support discuss New York law, the Court applies New York law to the question of the parties' contract formation.

4

B. <u>**Legal Standard for Motions to Compel Arbitration**</u>

"In the context of motions to compel arbitration brought under the Federal Arbitration Act, the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir.2003) (citations omitted). The Court must grant a motion to compel arbitration "if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) (internal citations omitted).

Under the FAA, a "written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of ... a contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). Accordingly, when deciding whether an action should be arbitrated, "first, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable…" *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

C. <u>**Existence of a Valid Arbitration Agreement between Plaintiff and American Express**</u>

The parties dispute the existence of a valid arbitration agreement. Defendant argues that because Plaintiff's employer authorized her as an "Additional Cardmember" on the credit card account, once she began using the credit card, she was subject to the terms of the Cardmember Agreement, one of which is the Arbitration Provision. (Motion at 7-8; 11-12).

5

Plaintiff in turn argues that she was not a signatory to the Cardholder Agreement, that her use of the credit card did not amount to assent to the Arbitration Provision, that she was never notified of the terms of the Cardholder Agreement, and that she was not "offered" anything that she could accept by using her employer's company card. (Opposition at 1, 4).

The American Express card mailed to Plaintiff's employer that Plaintiff subsequently used stated on the back of the card: "USE OF THIS CARD IS SUBJECT TO THE CARDMEMBER AGREEMENT." (Herr. Decl. ¶ 4). Plaintiff argues that she never signed or assented to the credit card's terms; Defendant maintains that the disclosure of the Cardmember Agreement on the credit card, along with Plaintiff's actual use of the card, is more than enough to establish Plaintiff's assent to the Cardmember Agreement.

The use of a credit card establishes assent to the credit card's terms, whether or not the user signed the credit card's governing agreement. *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 786 N.Y.S.2d 478 (2004) (finding that Plaintiff consented to arbitration provision in credit card agreement by continuing to use credit cards at issue, even if she had not read the arbitration provision); *Salerno v. Credit One Bank*, NA, No. 15-CV-516 (JTC), 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015) ("[U]nder New York law[, . . .] regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account") (collecting cases); *Anonymous v. JP Morgan Chase & Co.*, No. 05-CV-2442 (JGK), 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (plaintiff agreed to terms of arbitration provision in credit card agreement where there was "uncontested evidence" that plaintiff used the credit card and made payments on it for several months).

Plaintiff concedes that she used the credit card at issue here. (Opposition at 4). Plaintiff additionally does not dispute that the credit card she used stated that "USE OF THIS CARD IS SUBJECT TO THE CARDMEMBER'S AGREEMENT." (Opposition at 2). While Plaintiff maintains that this line was in "fine print" and was "tucked into a corner on the back of a credit card" (Opposition at 7), she does not state that she did not see or was otherwise unaware of this line. Plaintiff's arguments that she did not sign or read the Cardmember Agreement are therefore unavailing. *See Morehouse v. PayPal Inc.*, No. 21-CV-4012 (RA), 2022 WL 912966, at *5 (S.D.N.Y. Mar. 28, 2022) (granting motion to compel arbitration where plaintiff's activation and use of the credit card at issue independently manifested her assent to terms of the cardholder agreement, which included arbitration agreement, even if she had not read the agreement); *Carr v. Credit One Bank,* No. 15-CV-6663 (LAK), 2015 WL 9077314, at *2 (S.D.N.Y. Dec. 16, 2015) ("Under New York law, the acceptance and use of a credit card demonstrates acceptance of the conditions in a Cardholder Agreement. Thus, even if plaintiff never signed an agreement, her use of the credit card … manifested her intent to be bound by the Cardholder Agreement").

   D.  **Plaintiff's Claims are Within the Scope of the Arbitration Agreement**

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008). Accordingly, "arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Morehouse*, 2022 WL 912966, at *6 (internal citations and punctuation omitted).

7

Plaintiff does not argue that her claims are outside the scope of the Arbitration Provision, and such an argument would be unavailing. The Arbitration Provision in the Cardmember Agreement defines "claim" as any "claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, . . . or the relationships resulting from any of [these] agreements," including "claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity" as well as "claims by or against any third party using or providing any product, service or benefit in connection with any account . . . ." (ECF 17-1 at 8). This language squarely covers Plaintiff's claims sounding in the Telephone Consumer Protection Act.

### III. CONCLUSION AND OBJECTIONS

Because a valid agreement to arbitrate exists here, and because Plaintiff's claims fall within the scope of that agreement, Defendant's Motion to Compel Arbitration be **GRANTED** and the action is **STAYED** pending completion of arbitration.

The Clerk of Court is respectfully directed to close ECF 15.

**SO ORDERED.**

Dated: March 6, 2023
New York, New York

*/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge